First case on the call of the docket today, Wednesday, May 11, 2011, is Agenda No. 5, Case No. 110067, People v. Taylor. I see counsel for the appellant is ready. You may proceed. May it please the court, my name is Rita Stotz, I'm with the Office of the Illinois Attorney General, and I represent the people of the state of Illinois. The appellate court made three significant errors in vacating the trial court's judgment. First, the court applied the wrong authentication standard to the admission of the surveillance tape. Second, the court ignored the fact that the defendant had failed to raise objections to the chain of custody and to the use of a duplicate instead of the original at trial. And third, the appellate court ignored the trial court's findings regarding defendant's confessions in concluding that the admission of the tape was not harmless. I'll start with the authentication standard. What the appellate court did was to create a checklist for admitting video recordings where there is no eyewitness. That checklist required the proponent to show a proper chain of custody, to show that the device that produced the recording was operating properly in every respect, and that the original recording had been preserved. According to the appellate court's rule, if any single item on this checklist is not satisfied, then the recording must be excluded. The checklist rule that the appellate court created is wrong. First of all, there is no support in Illinois law for this rule. Neither the appellate court nor the defendant has been able to identify any Illinois precedent for the checklist rule. There are no prior Illinois cases that exclude a video recording simply because the proponent cannot satisfy an item on the checklist. The cases the appellate court cited held only that satisfying items on the checklist are sufficient to authenticate a video, but not that they are necessary. Not only is the checklist rule unsupported by Illinois law, it's actually directly contrary to some of this court's prior cases. In the child pornography cases of Norman and Phillips in particular, which are cited in our opening brief, are one example of how the checklist rule is contradictory to Illinois law. In those cases, the defendants made an argument very similar to the one defendant is making here. They said the existence of technology that makes it possible to fake evidence requires a higher authentication standard. Specifically, the argument in those cases was that there was technology that made it possible to create fake child pornography using a computer-generated virtual child instead of a real child. This court rejected that argument and said there's no need for expert testimony or additional foundation evidence beyond the images themselves. The images themselves were held to be self-authenticating and the fact finder was deemed perfectly capable of determining from the images themselves whether the children depicted in the images were real. The holdings in those cases show two things. First, they show the appellate court's assumption was wrong. You don't need specialized foundation evidence simply because technology exists that makes it possible to fake evidence. Ms. Stotz, with regard to the case at present, don't we all know that there was a copying procedure here? Don't we need some authentication on how the copying was done exactly and by whom? Because there's very little evidence that was presented here, only the detective's report which stated he copied it and put it in his desk drawer. And further, then, what about chain of custody? Well, I have two points about the copying issue and the chain of custody. The first point is that both of those objections were forfeited by the defendant in the trial court. He did not raise an objection on either basis at trial. I take defendant's brief in this case to be conceding that he forfeited the duplicate issue. And so the appellate court shouldn't have even reached that question. As the appellate court said, it was obvious to everyone, to the defendant and to the trial judge, that the tape that was introduced was a copy. For one thing, all the evidence showed that the original recording was a digital recording. And then what was introduced in court was a VHS tape, obviously a different format. Also, the defendant had Annan's police report prior to trial that explained how this was done. It's true he didn't explain how you copy a digital recording to VHS, but copies are introduced all the time, say a duplicate of a document, a Xerox. And parties don't have to, you know, bring in an expert to explain how a Xerox machine works. If the other party isn't making an issue of it, it's sufficient to say this is a copy. And that's what happened here. The police report, which was evidence before the trial court, says this is a copy of the DVR. Not only that, it says, Detective Annan says, I broke off the tabs on the tape, meaning it couldn't possibly be tampered with or overridden, and then I locked it in my desk drawer. So even without defendant raising the issue, we had plenty of evidence in the record regarding chain of custody. May I ask you just to clarify that issue about the record? How is the police report evidence? The defendant attached it to a pretrial motion in limine. So I'm not saying that the evidence... So it's not in evidence. So let's be really clear. The police report, the description of how the copy was made was not entered into evidence. It wasn't entered into evidence of guilt at defendant's trial. It was evidence that the trial judge could consider in making the preliminary determination of whether to admit another piece of evidence at trial. And the Illinois Rules of Evidence make clear that there's a distinction here. If you're admitting evidence at trial, the rules govern, and you can only get the evidence in if it passes the rules. If all you're trying to do is make a preliminary determination, the way you might at a hearing on a motion in limine or a motion to suppress, the court can look at other evidence, even if it doesn't satisfy the rules of evidence, so it can look at hearsay, like Annan's police report, and consider that in deciding whether to admit other evidence. So I don't know what it means to say that it wasn't in evidence, but if the point is that it wasn't in evidence at trial and it wasn't evidence of guilt, that's correct. But it was evidence the trial court could consider in determining whether to admit other evidence, namely the tape. And the court specifically acknowledged the police report, so there's no reason to think the court wasn't considering it. You say to repeatedly, I think, to Illinois Rules of Evidence, which were recently adopted by this court, but would those rules apply to this trial that took place several years before the adoption of those rules? They do, because all those rules do is codify the previously existing Illinois evidence law. And I've cited to them because I think it makes the issues clearer in this case, and it's easier to see how all this court's prior decisions work together. It also is helpful because it's easy to find cases from other jurisdictions to see how they've handled it, because the rules that this court's now adopted are identical to the federal rules in almost every respect, and in all relevant respects here, and a number of other courts. And I don't take defendant to be saying that these rules shouldn't apply. That would make no more sense than saying this court's prior cases on the admission of evidence shouldn't apply. The rules just codify prior law, so there's no change, there's no retroactivity problem. Counsel, do you agree that a foundation required for a recording made by an unmanned surveillance camera, the so-called silent witness, is different from the foundation required when a witness can testify for personal knowledge? No. The foundation for admitting any item of real evidence, whether it's a video recording, whether or not there's an eyewitness to that video recording, whether it's a document, whether it's a photograph, the standard is the same for every type of evidence, and that's set forth in Rule 901. The question is, is there evidence sufficient to support a finding that the evidence is what the proponent claims it to be? So 901 makes it clear the standard doesn't vary based on the type of evidence. So that's one way the appellate court's checklist approach was wrong. 901 also makes it clear that this universal admissibility standard doesn't involve any items on the checklist. Instead, the rule says there are a number of ways you can get to meet your authentication burden. So eyewitness testimony is one way. Evidence of the system that produced the evidence is another way. And what you do is you take into account all of the evidence, and if it meets the threshold, then the item of evidence comes in. 901 also makes it clear that the authentication standard is lower than the appellate court seemed to think. It doesn't require conclusive proof of authenticity. It just requires evidence sufficient to support a finding. In other words, a preponderance of the evidence, something more than a 50% probability that the evidence is real. Once that minimal threshold is met, the evidence comes in. And any further question about how much weight the evidence should get or whether it is in fact real is a question for the trier of fact. You know, under the old, what I was more familiar with in practicing, when a picture was taken, it was taken and there was no compromising or changing it. With digital cameras and what Jay Leno does on TV with his famous people and puts them into situations where obviously they weren't there, given that that technology is available, where is the burden at the time that a tape is going to be admitted of showing that there has not been any tampering with it? Is that burden on the state to show that? Or is that burden on the defendant in this case to raise an issue and indicate that there may have been some tampering? The burden is always on the proponent of the evidence to prove by a preponderance that the evidence is authentic. In other words, that it is what the proponent claims. So there's two mutually exclusive possibilities. Either the evidence is real, it's authentic, it's what the proponent claims, or on the other hand, it's fake, it's tampered, it's altered, it's inauthentic. So those are mutually exclusive and they vary inversely. So the more evidence of authenticity, the less probability of fakeness or tampering. So what the proponent has to do is get the evidence up to more than 50% probability that it's real. That means it comes in. Now if there's evidence on the other side suggesting that it's fake, tampered, inauthentic, that automatically pushes down the probability of realness or authenticity. And it's a case-by-case approach. It will turn on all the evidence. It's not a question of burden, although it is the proponent's burden to keep it above 50%. But if the evidence of tampering is such that it pushes the probability of authenticity to 50% or less, then the evidence is out. But anywhere in that area in between, if it's more than 50% authentic and there's maybe some evidence of tampering, it comes in and it's a question for the jury. Oh, and to the point about the technology that makes it possible to fake images, that technology, that's something that can be said of all evidence. Any evidence can be faked. And it doesn't always require a lot of technology. A document, for instance, can easily be faked or tampered with with some whiteout and a photocopier. You know, photographs could be faked even before they were digital. Witness testimony can be faked because it can be, the witnesses could be lying. But there isn't a different standard, you know, based on, it's not enough for the opponent just to say, this might be fake, therefore I demand more. What's going to make a difference is if there is evidence. And here the defendant didn't have any evidence of tampering. The state had a lot of evidence of authenticity, and all he had was a theory. He said, 30 seconds is missing, maybe someone deleted it. Well, that's possible, but there was no evidence to support it. And the trial court looked at that theory carefully. The trial court reviewed the tape, and it grilled Detective Annan about how the motion sensor worked. And it found, as a matter of fact, that the 30 seconds had not been deleted. It was simply never recorded at all due to the limitations of the motion sensor and the nature of the defendant's movements. I would encourage the court to review the tape, because I think it strongly supports the trial court's finding on that. So that's a factual finding, that the 30 seconds were not deleted. That was the only specific tampering theory defendant raised in the trial court, and that was rejected, and he hasn't challenged it. Just to get back to my point about the child pornography cases, how they show that the checklist rule is wrong, in those cases, there was no eyewitness to the activity on the recordings. There was no evidence that the equipment used to produce the recordings was functioning properly. And, of course, there was no chain of custody. And this court held that the images were still admissible. Not only that, they were deemed sufficient to prove beyond a reasonable doubt that the children were real children and not fake children. Finally, the checklist approach is wrong because it's contrary to logic. It gives controlling weight to an irrelevant factor, and yet it completely ignores the highly probative evidence of authenticity. The defendant's case is an excellent example of the rule's faulty logic. So here the appellate court held that the camera's motion sensor had malfunctioned, and since the proper operation of the equipment was an item on the court's checklist, it said any malfunction means the evidence is out. But that malfunction, even assuming it occurred, was completely irrelevant to the reliability of the footage that was recorded. Excluding the tape on this basis makes no more sense than excluding a recording because, for example, the equipment was supposed to record in color, but it instead recorded in black and white. It's a malfunction, but it doesn't make a difference in reliability. But yet the appellate court's checklist approach gives controlling effect to this irrelevant factor. On the other hand, the checklist approach completely ignores highly probative evidence that the recording was real. That's namely defendant's two confessions. The fact that he confessed twice to doing the exact crime he is seen committing on the tape makes it virtually impossible that the tape is not real. And the court appeared to recognize that because it said other explanations for the tape are implausible. And yet, apparently because the confession didn't factor into the checklist, the court completely ignored that powerful evidence of authenticity. So any approach that gives controlling weight to irrelevant evidence, irrelevant factors, and yet completely ignores a highly relevant factor, such as the fact that the defendant has confessed to doing exactly what he's seen doing on a recording, is contrary to logic and it can't possibly be right. So for all these reasons, this court should not apply the checklist approach and instead apply the general authentication standard that's always been part of Illinois law and is now codified in Rule 901. I'll also touch briefly on the harmless error issue. Even assuming that the admission of the tape was error, and it wasn't, but if it had been, the appellate court should have found that the error was harmless. The defendant had twice confessed to this theft, and the trial court specifically found that the testimony about those confessions was credible. There was a testimony of Paul McConey about defendant's confession to school officials, and then there was testimony from Detective Annan that two weeks later, defendant also confessed to the same crime to him. He confessed to this very same theft on this date? Yes, according to Detective Annan's testimony. And not on other occasions? Correct. The trial court specifically found both of those witnesses credible and specifically found the defendant had confessed to this theft. Given those findings, there is no reasonable probability that the trial court would have acquitted the defendant, even without the tape. And along those lines, I would note that the reasonable probability of a different outcome is the correct harmlessness standard here. It's not the harmless beyond a reasonable doubt standard the defendant is standing to. That only applies in cases of constitutional error. This, if it was an error at all, was a non-constitutional evidentiary error, and as this court explained in 2006 in In Re Eh, those type of errors are governed by a lower harmlessness standard. Unless there are further questions at this point, I'd ask the court to reverse the appellate court's judgment. Thank you, Ms. Stotz. Counsel for the appellee. May it please the court, my name is Jack Hildebrand, and I'm representing Mr. Taylor in this matter. To start off, it's not our position that this tape could never be authenticated by the state. It could have been, but it wasn't, not on the facts in this case. The state could have brought in the original recording or at least the original recording. Isn't that in the system itself? Isn't it something like a computer where it's in the hard drive? Yes. It's a computer record. It's a computer file. So they'd have to bring in the original and they'd have to bring the computer in. They would need a computer to show it, yes. Because the DVD copy is right from the computer. Well, that's debatable. I mean, that's what the- Well, that's what usually happens. In order to get something from your computer, you have to put it on a disc or something, don't you? No, you can go right from the hard drive onto a VCR tape if you have the right equipment. But still, the original is in the computer. Yes. Mr. Hildebrand, I thought from reading the facts that Detective Hannon, if that's how it's pronounced, installed a motion-activated DVR in the high school principal's office. Correct. I mean, I guess I gathered from that if it was specially installed that it wasn't part of some existing, I don't know, video system in the high school. Yes. Maybe it was. No, he bought the equipment at a store and brought it over there and set it up. But didn't it go into a system? Wasn't it a feed into a computer? Yes. He said that it fed into a DVR, a digital recorder. And that's what he says he viewed. He viewed the digital recording using a monitor that he brought over there. I'm sorry, what did you say? He viewed the what? He viewed the original digital recording using a monitor that he brought with him to the school so that he could view it. Thank you. Because it's digital, that's the only way you can view it. And there's no reason why this couldn't have been brought into court. It's just as easy as a video. It's easier than a videotape. You just take the file with you to court and run it on a monitor. The silent witness rule was designed to allow authentication in cases like this where we have a recording where there's no witness with personal knowledge that can authenticate the recording. This opens up the door for this type of evidence to come in. It's important evidence. Surveillance cameras are all over right now. And those surveillance cameras are going to pick up extremely probative information that should be used at a trial. Are you suggesting that this Court have a definitive list of factors that must be met in order for electronic evidence to be admissible? No, I'm suggesting that a reasonable list that is tailored to the evidence that's being offered be followed when there is no witness. But if it's the recording such as this, wouldn't the rule have to require no changes or additions or deletions? Yes. Wouldn't that be kind of illogical because then you get a lot of irrelevant information, wouldn't you? Well, if there are, I don't think that rule is in cement. I think you have to apply it to the facts of the case. In this case, we don't even know if irrelevant stuff was taken out. We don't know what happened in those, why it was chopped up in time. Do we know that it actually was chopped up? Yes. Does the record reflect that? Yes. And the detective? There's gaps of time. But does that mean it actually was chopped up? Your opposing counsel said that it was a gap of time because the defendant wasn't moving and therefore it stopped. So does that mean it was altered electronically some way or was it just because it didn't take a movie at the time? Well, that's, it shows that there's a problem with it. And it's the State's burden to make those findings or to prove to the Court that there's a reason for it. This tape, just as it is, could come in with the gaps if there's an explanation that's reasonable to the Court why they're there. You've used that word twice, reasonable, and also said look at the facts of this case. So, and I think opposing counsel talked in terms of at least some common sense. So the facts of this case are that Mr. Taylor confessed twice. That's right. Right? To this crime and other crimes. Allegedly, yes. Okay. And the issue seems to be this 30-second gap in time. And that gap comes after Mr. Taylor is already identified on the tape. Yes, I mean that's, he was identified from that tape as far as the school officials are concerned. So was the Court to believe based on the facts of this case that this recording, I mean, assuming for the purposes of argument that this 30-second gap was indeed a gap, right, where I think counsel has that, is it reasonable to assume that the recording first captured the defendant, who by the way had confessed twice, but then stopped while the real perpetrator rushed in and stole the money? Is that reasonable? Well, that's not the burden of the defendant to show whether it's reasonable. I'm not saying it's the burden. I don't know if it's reasonable. I don't know anything about this recording. Or alternatively, are we supposed to believe that someone fabric, that the defendant, I mean the trial court, is it reasonable for the trial court to believe under those circumstances of this case? I'm just using your words. Reasonable in circumstances of this case that someone fabricated the tape to then put in the pictures of the defendant that were already on the tape? Well, that's, the silent witness rule is designed to prevent altered tapes from coming in. And it's a reasonable rule. And in this case, we don't know how this video was made. We don't know, this video could have come from the week before. And he didn't know how to work the unit, and he starts looking at it, and he adjusts the contrast, and he can see the image. We don't know that. And we don't know how much light was in there. We don't know how the sensor worked. And the defendant should not have to prove that there's fakery here. I guess my point is, and it goes with one of the questions that was asked by either Justice Burke or Justice Garman, it seems like you want some type of bright-line rule, regardless of the facts of the case, and regardless of the reasonableness of assuming whether the tape is authentic or not, that you want this court to come up with a bright-line rule, a checklist rule, that you have to do this, this, this, this, and this, and unless that is done, it doesn't come in whether it's reasonable or not. It doesn't come in if the tape is reasonable or not. Okay, well, the checklist, we can call it that, but it's just simply the silent witness rule, which is really easy to establish. All we're asking is to show that the equipment worked, that it was operating properly, that the operator knew what he was doing, and that the original was preserved, like any other evidence that comes into the court. We need some kind of foundation and some kind of proof that there has been no tampering with it. And I think that this rule only is going to come up when, one, there is no witness that can testify with personal knowledge of what the tape reports show, but also if there is a challenge to the authenticity of the tape. And that's what happened in this case. Those two things have to be present. Is this a totality of the circumstances, then, rather than a checklist, or what? Well, it's a, it's, I'm not sure what the totality of circumstances would be. You're saying that the judge would. I mean, look at kind of what it is and what's been suggested, and you look at what's been presented in evidence, and as Justice Thomas referenced, what's the reasonable conclusion here? Or is it a mechanical checklist, as he's described, that you have to meet three, four points, and if you don't, you can't get it in? Is that? Well, the totality of the evidence would be that there is something wrong with this tape. It's not natural. It shouldn't be stopping like that. I've never seen a video where it stops like that just for no reason and skips over things. So the totality of the evidence in this case is that there is a problem with this tape, and it's the State's burden to, you know, establish a foundation for it. The State did put in evidence that the tape stopped or could have stopped because the defendant was standing still at that particular time, right, since it was a motion-activated tape. Correct. So that was discounted by the appellate court, so that's why I talk about the bright-line rule. It would seem like under the decision of the appellate court, any gap, explained or not, would be deficient. So any tape that had a gap in it would not come in, right? No. I think that what the appellate court is saying is if you have gaps, then you have to explain it or bring in the original. And that was not a sufficient explanation, then, that the tape could have stopped when the defendant was standing still? No. It was not reasonable at all. Why not? Because then we would have seen the defendant standing still like a statute in front of that camera for 30 seconds. Or away from the camera, or not there, or underneath the desk. Or underneath the desk for 30 seconds. No motion. We would be seeing an empty room for 30 seconds if that's how the system was set up according to what he testified. He did. I thought that when the camera stopped, he wouldn't have anything at all. And, again, the point was, or at least the explanation given to the trial court, was that the defendant crouched down, you couldn't see, and he was virtually motionless. And if it's a motion-sensitive camera, the recording will stop. I also note that, according to the appellate court's opinion on the briefs, there was a time date on the tape giving the date and the time, and that, of course, led to the discovery of the gap. But aren't those the facts? And following up on Justice Thomas' questions, didn't the trial court accept that as a reasonable explanation for the gap? The trial court accepted it as a reasonable explanation, and the reasonable explanation was he was uncomfortable with Annan's first testimony about how this tape functioned, or how the DVR functioned. Where does it show in the record that he expressed his being uncomfortable? Because he specifically questioned Detective Annan himself and asked him, what about this gap? And this is already after Detective Annan testified why he thought the gap was there. And, basically, Detective Annan said, I don't know. What he did testify to was, my best explanation is that either the defendant remained motionless or he went under the desk for 30 seconds until the camera stopped. Are we looking at the trial court's ruling for an abuse of discretion, or are we reviewing as de novo? I think this should be reviewed as de novo, but I don't think it would change the outcome if it's an abuse of discretion. I mean, the testimony from Detective Annan about this, when he's questioned by the judge, basically he says, I don't know, and the judge says, well, that's a good enough foundation. That's basically what happened here. Detective Annan had no answer for this, and the judge said, okay, that's all we need. And that's how the decision was made by the court. Is there a difference between a tape that's tampered with, which might purport to show something that didn't happen, and a tape that simply fails to record something, but the rest of the tape is accurate? All those things can happen, right. But here the only, it seemed like the primary objection was that the motion sensor didn't properly work and keep the tape or the camera rolling while the defendant was in front of it. It didn't seem like the objection that the trial lawyer made was that the tape was tampered with. It's just there's something unknown happened because the tape stopped running. That's right. And how could he know? He has not seen the original, which may have more than this copy does, and he was not told what was in the gaps or how the gaps occurred. He was not given a reasonable reason for why these gaps are there. How, if at all, does the defendant's confession factor into this? I don't think it does. I mean, this tape would have come in if it wasn't chopped up like that. That's what created the problem. That is the attack on that evidence, and I think that it has to be made based upon that. And the evidence about these admissions, they're all inconsistent. He has basically told Detective Vannon that he had done this before, and in his confession to Detective Vannon, he said that he stole like $400 in May and $500 in July, and then the e-mail from Sue Epson states that the defendant told her that he had done it on a couple of occasions and he took gas money, and in this case it was $20. So that doesn't match up. We're getting two different stories. Just to be precise, is there evidence in the record that the defendant confessed to this specific event? Yes, Detective Vannon said that. But Detective Vannon's report, his written report of the confession, doesn't contain the December 10th. So there's little problems all over here with the admissions that can be attacked. But the substantial problem here is when you look at the tape, there's something wrong, and that's why defense counsel objected. That's the only reason, and he wanted to know how this tape was made and how the ---- Can I ask one question? It appears that the focus of your argument is the recording of the images by this camera and the motion detector, etc. Are you also making arguments, or are they forfeited, that the transfer of that recording to the VHS tape is somehow infirm? Are you also arguing that? I don't know because I don't know what that digital recording shows. There was no testimony that is an exact duplicate of the digital recording. So the digital recording may have the gaps in it, too. I don't know. So your position, Mr. Hildebrand, is if Annan, for example, had successfully explained away the 30 seconds ---- I know your position is that he didn't. But if he had successfully explained away the 30 seconds on the tape, that it would have been admissible? Yes, I believe that there is somewhere an explanation that would be good enough. So I want to ---- I think the standard of proof question of Justice Karrmeier becomes important because the trial court, in the trier of fact, found that it was successfully explained away by Annan. So that's what the one hearing the testimony decided. I mean, wouldn't the appellate court and likewise this court have to find that it was against the manifest weight of the evidence for the trial court to make that determination, and therefore he abused his discretion to rule in the way you would want us to rule? If that would be acceptable to the defendant because we're going to get the same answer. I'm not saying we're going to. I don't know what we're going to do, but I'm saying that's what we would have to do, right? Right. Well, Annan did not explain why the gap was there. But the trial judge said he did. He did. He did without it being based on any evidence that he was given. He made that determination with no support in the record for it. If he was going to make that determination ---- Didn't we spend some time talking about how he said that he either didn't move or went under the desk or whatever the ---- Yes, and that's not reflected in the tape. The tape contradicts Annan's testimony about the gaps. It contradicts it. It doesn't support it. It doesn't make sense. If the tape is supposed to go for 30 seconds after there's no movement, that first segment was 12 seconds long, so it should have been at least 42 seconds long. Did what you said come out on cross-examination of Annan, that it didn't make at least the attempt to say that it didn't make sense? Well, if you consider the objections to the whole tape, that's what ---- No, I'm saying how this trial judge was supposed to say that, come up with this, that it was not a sufficient explanation. He found it to be a sufficient explanation. So what's in the record to indicate to him that Annan didn't sufficiently explain the gap in the tape? Well, Annan's first explanation was that he ---- Not what Annan said. I mean, Annan said what he said. What evidence does the trial judge hang his head on now to indicate that Annan's explanation was not sufficient, that you agree that if it was sufficient, the tape would come in? Annan's guess at why there's this gap. He based his decision on a guess that didn't add up. Is that what you're saying now? Yes. Okay. But that didn't ---- We're not going to go to a transcript and find where there's some testimony that Annan admits that he was guessing or it wasn't sufficient, right? No, it's obvious that he didn't know. Okay. Thank you. Thank you, Counsel. I have a couple of factual points to start. First, there was a question about the specificity of defendant's confessions. First, there's the confession to Detective Annan. That's on page 27. Detective, what, if anything, did the defendant say about his role in regard to the events that took place on December 10th at Deerfield High School at 452? The defendant told me he took the money out of Marcia's desk. Then there's Paul McConey's testimony about the confession to school officials, and this is on page 91. During this meeting, did you have a chance to talk to the defendant about his role in the theft that took place on December 10th, 2005, at Dean Marcia's desk? Did the defendant say anything about his role in that event? He admitted to taking some money. Admitted to taking money from where? From Dean Marcia's office, and that's on page 91. Another factual point is about the 30 seconds and what the trial judge found. Defendant is right that the trial judge showed some initial skepticism at the very beginning, and that's why he grilled Detective Annan about how the motion sensor worked. But the trial court later makes clear that he has viewed the tape himself, and he believes that the 30 seconds were never recorded. He says, and this is at page 123, I viewed the videotape several times. There was 30 seconds that defense counsel referred to as missing. I don't know that I would so much refer to it as missing based on the explanation the officer gave. This was a motion-activated video recorder. It shut off after a period of time if there was no motion detected and gave an explanation for why we had the 30-second jump. And I'm skipping ahead here to 124. There was no indication that this had changed in any way from the time he viewed it on Monday morning after the money was found missing. Simply because it did not record the entirety of the events in the room, I don't think that casts any doubt on the fact that it clearly showed the defendant in the room. So the trial court considered defendant's argument and rejected it. Another problem with the defendant's theory is that there should be 30 seconds showing the defendant standing still. That's only true if we believe that the recorder was set to go for 30 seconds after it stopped sensing motion. And that was part of what Annan testified to. Later he said it would only go for 15 seconds. And finally his testimony on this was he couldn't remember how long he set it to record for. So he was uncertain on that point. If he had set it for some lesser time, say five seconds, the gaps in the tape are completely consistent with that. The other problem with the defendant's theory is that it's assuming that this recorder is so sensitive that it picks up any motion. He says he was moving around when the recorder shut off in the middle of the tape. I disagree. I look at the tape and if he's making any motion there when it shuts off, it's extremely subtle. So of course he's not perfectly still. He's breathing. He's blinking or something like that. There's no evidence that this recorder was so sensitive that it would pick up slight motions like that. So the defendant's theory is that the 30 seconds was deleted and shows tampering. That was rejected by the trial court. That is a factual question that could only be reviewed for manifest error. It's not manifestly erroneous. If his point is that even if the 30 seconds wasn't deleted and even if it was just never recorded at all as the trial court found, then the tape still doesn't come in, that's just wrong. That's not how the authentication question works. That would allow the opponent of the evidence to say what he thinks the proponent ought to show and then complain that it's inauthentic because it doesn't meet his expectations. The frame of reference for authentication is what does the proponent claim its evidence is. So if we had tried to pass this tape off as a complete account of everything that happened in Marsh's office, then we would have an authenticity problem because there are clearly 30 seconds missing. But we never took that position. Our position all along was that this tape was an accurate recording of part of what happened in Marsh's office. Part of it wasn't recording and we've made that clear from the beginning. But it is an accurate recording of what we claimed it to be. That is part of the activity in the office. It's clearly authenticated under that standard. Defendant also, to the point about what could have happened in the missing 30 seconds, the defendant is free to make the argument to the fact finder that something exculpatory happened. And he could certainly offer evidence in support of that theory, but of course there isn't any evidence here. As to the issue of whether the original DVR recording was the same as the VHS recording, there is evidence on that point. It's true there's not testimony and that's only because defendant didn't make a point of this at trial. He had the police report that says I copied this DVR. He apparently didn't think there was anything to be gained from making an issue of it. If he had done it, we could have offered more detail. But as the record stands, there is proof. Just the detective saying this is a copy, that's sufficient to support a finding that it really is a copy. Finally, there was a point about why didn't we use the original. There's a couple of good reasons. It's not clear from the record, but there's a couple that the record supports. One is that all the record shows about how Annan was able to use the DVR was that he could plug in a 13-inch portable monitor to see what was on the DVR. And as the court's questions indicated, it was like a computer hard drive. So of course, one obvious explanation is that a 13-inch monitor isn't suitable for use at trial. Presumably it was transferred to VHS because they had a larger VCR they could play it on. The other problem is that it would be, as the court's questions suggested, impractical to sequester this equipment and not use it at all until the defendant's case was over. That's what we would have had to do if we had to introduce the original. That's why the Illinois rules permit the use of copies. It's impractical in some cases to introduce the original. And the copy is just as good unless the opponent makes an issue of it and defendant didn't do that. Finally, I'd just note that the defendant hasn't explained why we should ignore his confessions, and those are strong evidence that the tape is authentic. Unless there's anything else, I'd ask the court to reverse the appellate court's judgment. Thank you, counsel, for your arguments. Case number 11-0067, People v. Taylor, is taken under advisement as agenda number 5.